IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MILCROFTON UTILITY DISTRICT OF WILLIAMSON COUNTY, TENNESSEE | ) ) ) | |
| | ) | Case No. 3:18-cv-00330 |
| Plaintiff, | ) ) | |
| v. | ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE |
| CITY OF BRENTWOOD, TENNESSEE | ) ) ) | NEWBERN |
| Defendant. | ) ) | |

## MEMORANDUM

Pending before the Court are Defendant's Motion for Summary Judgment (Doc. No. 25) and Plaintiff's Motion for Partial Summary Judgment (Doc. No. 29). Each party filed a response and a reply. (Doc. Nos. 39, 43, 46, 49). In addition, Defendant filed a Statement of Undisputed Material Facts (Doc. No. 27) to which Plaintiff responded (Doc. No. 45), and Plaintiff filed a Statement of Undisputed Material Facts (Doc. No. 29) to which Defendant responded (Doc. No. 40).

For the reasons discussed below, the motions are DENIED.

## I.    BACKGROUND

Plaintiff Milcrofton Utility District of Williamson County, Tennessee ("Milcrofton") is a water utility district created under the Utility District Law of 1937, Tenn. Code Ann. § 7-82-101, *et seq*. (Statement of Facts ("SOF"), Doc. No. 40, ¶ 1). Milcrofton has held loans from the United States Department of Agriculture, Rural Development, or its predecessor agency, continuously from April 5, 1973, to the present. (*Id.*, ¶ 3).

1

Defendant City of Brentwood ("the City") is a municipality located in Williamson County, Tennessee. The City owns and operates public water and sewer systems and is providing water service to two housing developments – Morgan Farms and Traditions[1] – that lie within the Brentwood city limits.[2] Milcrofton claims that these developments are within Milcrofton's service area. Morgan Farms and Traditions are located in the vicinity of Milcrofton's northern boundary – whether within or without is in dispute.[3]

Milcrofton Utility District was created by judicial order in 1971 and "recreated" by judicial order on October 10, 1975. *See* Order, *In the Matter of: Milcrofton Util. Dist.*, Rule No. 462 (Williamson Cty. Ct. Oct. 10, 1975) (Doc. No. 25-2 at DocID# 215-19). The Order establishes the "perimeters and boundary lines" of Milcrofton as follows:

> [Beginning at] the point where Liberty Pike, I-65 and the southern boundary of the 8th Civil District of Williamson County intersect; thence eastwardly along the southern boundary of the 8th Civil District and following the same to the point where it comes closest to Clovercroft Road; thence following the 8th Civil District line northwardly and northeasterly to a point where the East boundary of the 8th Civil District and the South Boundary of the 15th Civil District intersect; thence eastwardly along the southern boundary of the 15th Civil District of Williamson County to the point where said southern boundary of the 15th Civil District intersects with the 16th, 19th and 14th Civil Districts of Williamson County …

---

[1] Milcrofton only claims that Traditions, section 1, is within its service area. All references to Traditions refer only to section 1.

[2] Prior to 2007, the land on which Morgan Farms and Traditions are situated was within the Franklin city limits. In the summer of 2007, the City of Brentwood and the City of Franklin entered into an agreement to adjust the boundaries so that certain areas, including Morgan Farms and Traditions, that had been a part of Franklin would be brought within the corporate limits of Brentwood. (Doc. No. 45, ¶ 3).

[3] It is undisputed that, with the exception of a single property located at what it now the entrance to the Traditions development, Milcrofton has never provided water to the disputed area. Until December 2007, Milcrofton provided water service to a house at 1820 Wilson Pike. (Doc. No. 45, ¶ 29). No lots for new homes are located in the area where the home was formerly located. (*Id.*, ¶ 32). The property is, however, supplied with water for irrigation. (Doc. No. 40, ¶ 34).

2

In 2007, while the subdivisions Morgan Farms and Traditions were still in the planning stages, the City informed the developer, "[I]t is our understanding and belief from review of information available on water service territories in the Split Log Road area that the Morgan/Drees area is located within the Milcrofton Utility service area. The City of Brentwood has no desire or interest in providing water service to Morgan/Drees tract." (Ltr. from Mike Walker, Brentwood City Manager, Doc. No. 25-1 at PageID# 177).

The developer then contacted Milcrofton about providing water service to the subdivisions. Milcrofton responded to the request for service on July 27, 2007, with a letter from its consulting engineer, Greg Clingerman:

> The above referenced project [Morgan Farms] is located within either the Nolensville/College Grove Utility District or the City of Brentwood water service area. The Milcrofton Utility Service District's boundary line runs east and west through the Morgan property approximately where the proposed McEwen Lane will be located. Since this project is located out of the district and due to the continued growth in the District the Milcrofton Utility District will not be able to provide water service to this project at this time. The District has an obligation first to provide there [sic] existing customers and future customers and proposed projects located within the boundaries of the District, adequate water service and pressure.
>
> The District is currently in the process of upsizing water lines in the district and is currently working on construction plans for a new main water booster station. Until these future improvements are completed, within the next 1-3 years, the District cannot consider providing water service to projects located outside of there [sic] service area.

(Doc. No. 45, ¶ 5).

As part of the zoning and subdivision process, during the summer and fall of 2007, developers for Morgan Farms and Traditions submitted draft plans to the City identifying Milcrofton as the planned provider of water services to the subdivisions. On October 29, 2007, presumably after further inquiry about Milcrofton providing water service to the developments, Milcrofton's

3

engineer, Clingerman, forwarded a copy of the July 27, 2007 email to the developer's engineer, Brad Slayden. (*Id.*, ¶ 7). This time, he attached a map showing the water district boundary. (*Id.*)

On November 13, 2007, City staff sent the developers comments to the proposed Morgan Farms development plan. (*Id.*, ¶ 8). The comments requested "documentation from the Milcrofton Utility District regarding their ability or inability to provide water service to this area" and "a water availability letter from the Milcrofton Utility District." (*Id.*, ¶ 9). Slayden responded to the City: "[T]here is indecision at this time as to whether Milcrofton Utility District or the City of Brentwood is the water service provider on this project. It seems the demarcation line between the potential providers is extremely ambiguous. We are doing our best work to achieve a resolution to this issue. As soon as the provider is determined, we will work to obtain a letter of availability." (*Id.*, ¶ 11).

On December 13, 2007, the engineers for the developer and Milcrofton met to discuss the water service areas. Following the meeting, Clingerman wrote a letter to the developer's engineering firm, copying Milcrofton's manager and attorney. The letter confirmed that the proposed developments were outside Milcrofton's service area. Clingerman wrote:

> After our meeting of December 13, 2007 we have reviewed the original charter on the District's northerly boundary in relation to the above projects [Traditions and Morgan Farms]. When the District was formed the 14th Civil District's norther boundary did not take in the property that these two subdivisions are being proposed to be developed on. Attached is a copy of a portion of the Civil District map showing the Civil District Boundaries when the Milcrofton Utility District was chartered. Based on this information the above referenced projects are not located within the Milcrofton Utility District. Since these projects are outside the District's boundary, Milcrofton Utility District cannot provide water service to these projects.

> The District is willing to serve these projects in accordance with its Water Service to Developments rule. In order for the District to serve this area, the City of Brentwood would have to authorize Milcrofton to serve this property, and Milcrofton and the City of Brentwood would need to enter into an agreement authorizing Milcrofton to service these subdivisions.

4

> If your clients want to pursue this request, you need to request the City of
> Brentwood authorize Milcrofton Utility District to provide water service to
> these projects an obtain an agreement from the City of Brentwood to allow
> Milcrofton Utility District to serve these areas.  Once all of this has been
> completed, then we will be able to proceed with discussing what improvements
> to the existing water system will need to be made, time frame on design, fees,
> etc.

(Dec. 18, 2007 Ltr. from Clingerman to Slayden, Doc. No. 25-1, PageID # 230).

In May 2008, Brentwood's Director of Water Services wrote a memorandum to the City Commission stating that "both water districts [Nolensville and Milcrofton] have confirmed the properties are not located in their service area nor do they wish to provide service to these parcels." (Milton Aff., Doc. No. 25-4).  Thereafter, the Brentwood City Commission passed resolutions expressing the City's commitment to provide water service Morgan Farms and Traditions. (City of Brentwood Resolution 2008-26, May 12, 2008, Doc. No. 25-4 at PageID # 369).  The resolution states that these areas were labeled "unclaimed parcels" on the accompanying map and the Court assumes this to be an accurate representation.  The details of map, however, are largely indecipherable.  In conjunction with the commitment to provide service to these areas, the City entered into an agreement with the neighboring Nolensville/College Grove Utility District transferred the rights to serve certain parcels as shown on the aforementioned map. (Amd. No. 1 to Service Area and Water Purchase Agreement, May 27, 2008, Doc. No. 25-4 at PageID# 372).  The transfer of service area was approved by the USDA. (Doc. No. 25-4 at PageID# 375).

An economic recession stalled progress on the subdivisions for several years.  During that time, Milcrofton provided water service to a new development called Breezeway adjacent to Morgan Farms.  The Breezeway improvements were complete in 2009. (Doc. No. 40, ¶¶ 17-19). Construction on Morgan Farms and Traditions began in 2013 and 2016. (Doc. No. 45, ¶¶ 22, 25). Both developments were done in several phases.  Water mains in Morgan Farms were complete

between December 2013 and January 2018 and meters were set between January 2014 (section 1) to March 2018 (section 7). (*See* Milton Aff., Doc. No. 25-4, ¶ 22; Doc. No. 40, ¶ 25). In Traditions, water mains were completed in November 2016 and the water meters were set in June 2017. (*See* Milton Aff., Doc. No. 25-4, ¶ 24; Doc. No. 40, ¶ 25). To recoup the cost of infrastructure improvements, the developers paid "water tap fees" for each lot up front. The developers paid $865,000 for all lots in Morgan Farms on December 13, 2013, and $130,000 for lots in Traditions on November 16, 2016. (Milton Aff., Doc. No. 25-4, ¶ 23; Doc. No. 45, ¶ 24, 27). An additional $4,000 was paid for tap fee for certain Traditions lots. (Doc. No. 45, ¶ 27).

In 2015, Milcrofton received new maps of its infrastructure and service area.[4] (Jones Dep., Doc. No. 25-2 at PageID# 194). Milcrofton then commissioned a "second opinion" "follow-up map … to confirm where our boundary actually is." (Jones Dep., Doc. No 25-2 at PageID# 199). The date on this map was illegible even during the deposition. (*Id*.) Another northern district boundary map ("you can read the date on this one") is dated June 2018. (*Id*. at PageID# 200).

On February 6, 2018, the engineering firm Ragan Smith, the firm that helped plan Morgan Farms and Traditions, requested Milcrofton approve a plat for a portion of the McEwen Drive extension that would run between Breezeway, serviced by Milcrofton on the south, and Morgan Farms, serviced by the City on the north. Milcrofton's general manager responded, "I can't sign it until I know what is going on … We have a survey of our District and that's our water service area back there not Brentwood." (Doc. No. 45 at 12).

---

[4]  Six different maps are included as exhibits to the deposition of Milcrofton's manager, Mike Jones. (Doc. No. 25-2). For the most part, the maps, are indecipherable.

On April 2, 2018, Milcrofton filed a Complaint alleging that Defendant City of Brentwood unlawfully encroached upon Milcrofton's water district and deprived it of customers in violation of 7 U.S.C. § 1926(b) and state law. Milcrofton claims "Brentwood took advantage of a mistake by Milcrofton's former engineer and provided water service to these subdivisions, in violation of law, so that it could collect hundreds of thousands of dollars in tap fees." (Pl. Resp., Doc. No. 43 at 1). The City moved for summary judgment on all claims. (Doc. No. 25). Milcrofton filed a motion for partial summary judgment seeking judgment as to liability on all counts. (Doc. No. 29).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence

7

in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

## III. ANALYSIS

### A. Service Area Protection Under 7 U.S.C. § 1926(b)

The Consolidated Farm and Rural Development Act made federal loans available to rural water associations and provides the recipients of those loans a measure of protection from competition. 7 U.S.C. § 1926(a) and (b). Section 1926(b) "prevents local governments from expanding into a rural water association's area and stealing its customers." *Ross Cty. Water Co., Inc. v. City of Chillicothe*, 666 F.3d 391, 397 (6th Cir. 2011) (citing *Le-Ax Water Dist. v. City of Athens, Ohio*, 346 F.3d 701, 705 (6th Cir. 2003)).

The statute provides:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b).

Section 1926(b) has two specific purposes: (1) "to encourage rural water development by expanding the number of potential users" and (2) "to safeguard the financial viability of rural water associations and [their federal] loans." *Ross*, 666 F.3d at 397 (quoting *Lexington-South Elkhorn*, 93 F.3d 230, 233 (6th Cir. 1996). Expanding the number of potential uses encourages rural water development by lowering the per capita fixed costs. *Id.* (*citing* S. Rep. No. 87-566, at 67 (1962)). Protecting the customer base of rural water associations, Section 1926(b) also safeguards the

8

financial viability of rural water associations and the corresponding ability to repay federal loans. *Id.* (stating that the purpose of Section 1926(b) is to "encourage rural water development by expanding the number of potential users and to safeguard the financial viability or rural association and [United States Department of Agriculture (USDA) Rural Development] loans") (quoting *Lexington-South*, 93 F.3d at 233)). Section 1926(b) protects borrowers "from loss of users due to actions or activities of other entities in the service area of the Agency financed system. Without this protection, other entities could extend service to users within the service area, and thereby undermine the purpose of the congressionally mandated water and waste loan and grant programs and jeopardize the borrower's ability to repay its Agency debt." 7 C.F.R. § 1782.14.

"Responsibility for initiating action in response to those actions prohibited by 7 U.S.C. 1926(b) rests with the borrower." 7 C.F.R. § 1782.14. The Sixth Circuit has repeatedly directed that Section 1926(b) "should be given a liberal interpretation that protects rural water associations indebted to the [USDA] from municipal encroachment." *Ross*, 666 F.3d at 397 (citing *Vill. of Grafton v. Rural Lorain Cty. Water Auth.*, 419 F.3d 562, 565 (6th Cir. 2005)).

Before addressing the substance of Milcrofton's Section 1926(b) claim, the Court will first consider the applicability of several affirmative defenses raised by the City – statute of limitations, and the equitable defenses of laches, waiver, and estoppel. Brentwood argues that regardless of the claim's merit or lack thereof, Milcrofton has simply waited too long to bring claims related to the right to provide water service to the disputed areas. Milcrofton asserts that its right to enforce its exclusive service area is unbounded by the usual temporal constraints as neither the statute of limitations nor the equitable doctrine of laches can forestall its claim. Milcrofton essentially argues that it could wait indefinitely (so long as it continuously holds a qualifying loan) to enforce its rights under Section 1926(b). The Court disagrees.

9

1. <u>Statute of Limitations</u>

The claim alleging violation of 7 U.S.C. § 1926(b) is brought under 42 U.S.C. § 1983. In Tennessee, Section 1983 claims are subject to a one-year statute of limitation. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003) (citing Tenn. Code Ann. § 28-3-104(a)(3)) and *Berndt v. Tenn.*, 796 F.2d 879, 883 (6th Cir. 1986)).

Milcrofton argues the statute of limitations does not apply to its claims for two reasons: (1) statutes of limitations do not apply to any claims brought by entities created under the Utility Law of 1937 ("UDL"), Tenn. Code Ann. § 7-82-101 *et seq*; and (2) the *nullum tempus* doctrine, codified at Tenn. Code Ann. § 28-1-113, which prevents the application of a general statute of limitations to actions brought by the State of Tennessee, applies to Milcrofton.

A. <u>The Statute of Limitations Applies to Milcrofton's Federal Claim</u>

Milcrofton argues that the UDL precludes application of any statutory limitations period because the UDL proclaims that it is "complete in itself" and that "any other law, general, special or local, except as provided in this chapter, shall not apply to a district incorporated under this chapter."[5] Tenn. Code Ann. § 7-82-107. Milcrofton reasons that although the UDL gives utilities the right to sue and be sued, a statute of limitations not contained within the UDL is "any other law" and, therefore, cannot apply to Milcrofton. Milcrofton does not provide any authority, other than a creative reading of the statutory language, to support the proposition that the legislature intended for entities created pursuant to the UDL to pursue claims without regard to generally applicable limitations periods.

---

[5]     Tenn. Code Ann. § 7-82-107 states: "This chapter is complete in itself and shall be controlling. The provisions of any other law, general, special or local, except as provided in this chapter, shall not apply to a district incorporated under this chapter; provided, that nothing in this chapter shall be construed as impairing the powers and duties of the department of environment and conservation."

10

The UDL grants utility districts the right to, among other things, sue and be sued, incur debts, enter into contracts, and enforce property rights. Tenn. Code Ann. § 7-82-304. There is no indication that the legislature intended for a utility district to be free from the constraints of all other generally applicable laws while engaging in these activities. It is far more likely that this provision was intended to clarify that such other laws are inapplicable to municipal corporation created under the UDL. *See e.g.* Tenn. Op. Atty. Gen. No. 12-11 (Feb. 3, 2012) (opining that utility districts created under the Utility District Law of 1937 are not subject to the Municipal Electric Plant Law of 1935); *City of Crossville v. Middle Tenn. Util. Dist.*, 345 S.W.2d 865 (Tenn. 1961) (holding a utility district held an exclusive franchise notwithstanding a city charter provision to the contrary); *Harpeth Valley Util. Dist. v. Metro. Gov't of Nashville and Davidson Cty.*, No. 01A1-9711-CH-00686, 1998 WL 313397 (Oct. 26, 1998) (holding municipal zoning regulations do not apply to utility district).

Moreover, Tennessee courts regularly apply generally applicable laws to municipal corporations created pursuant to the UDL. *See e.g., Batson v. Pleasant View Util. Dist.*, 592 S.W.2d 578, 582 (Tenn. Ct. App. 1979) (holding that utility was subject to applicable laws governing contracts notwithstanding its statutory power, under the UDL, to "fix, maintain, collect, and revise rate and charge for any service" because "rules that control a private individual or corporate business generally apply to a utility district operating its utility"); *Bybees Branch Water Ass'n v. Town of McMinnville*, 333 S.W.2d 815, 816 (Tenn. 1960) (municipal corporation is governed "for the most part" by the same rules that control a private, individual, or business corporation and is bound to terms of contract).

The Court concludes the Utility Law of 1937 does not insulate Milcrofton from otherwise applicable statutes of limitations.

11

2.  The *Nullum Tempus* Does Not Apply to Milcrofton's Federal Claim

Milcrofton argues that the doctrine of *quod nullum tempus occurrit regi*, literally "time does not run against the king" applies to its claims to enforce its service area.  The common law doctrine of *nullum tempus* "prevents an action brought by the State from being dismissed due to the expiration of the statutory period of limitations normally applicable to the specific type of action." *Hamilton Cty. Bd. of Ed. v. Asbestospray Co.*, 909 S.W.2d 783, 785 (Tenn. 1995).  Tennessee has codified the *nullum tempus* doctrine.  *See* Tenn. Code Ann. § 28-1-113 ("The provisions of this title [pertaining to the statutes of limitations] do not apply to actions brought by the state of Tennessee, unless otherwise expressly provided.").  It is "well settled" in Tennessee that the *nullum tempus* doctrine applies, in certain cases, to subordinate organs of the state.  *Asbestospray*, 909 S.W.2d at 785.  Milcrofton argues this is one of those cases.

The basic rule regarding the applicability of *nullum tempus* to subordinate bodies was set forth in *Wood v. Cannon County*, 166 S.W.2d 399 (Tenn. 1942).  The court stated:

> The statute of limitations does not run against the sovereign or the state, or against a county, when [the county is seeking] to enforce a demand arising out of or dependent upon, the exercise of its governmental functions as an arm of the state.  But the statute does run against a county or municipality in respect of its rights or claims which are of a private or corporate nature and in which only its local citizens are interested, as distinguished from a public or governmental matter in which all the people of the state are interested.

*Wood*, 166 S.W.2d at 401.

Applying the rule from *Wood*, the relevant question is whether Milcrofton, a public utility, is asserting claims which are of a "private or corporate nature in which only its local citizens are interested" or a "governmental matter in which all the people of the state are interested."  Milcrofton argues that, as a public utility, it is an arm of the state operating for a governmental purpose comparable to that of the school board in *Asbestospray*.

12

In *Asbestospray*, the Tennessee Supreme Court held the *nullum tempus* doctrine applied to an action by a local school board to recover the costs of asbestos removal from a local school building because education is a "quintessential governmental, not a private function." *Asbestospray*, 909 S.W.2d at 786. The court reasoned that not only did the state constitution impose a duty to provide a free and public education and a corresponding duty to maintain school properties, the state delegated the maintenance of school properties to local governments. *Id*. ("[A]s is the case with many other aspects of education, the State has simply delegated its governmental function—in this instance that of maintaining school property—to subordinate bodies.") The court further noted that EPA rules subjected the school districts to potential civil penalties for failing to address asbestos in school buildings and that asbestos removal or abatement has been considered by other courts to be a government function affecting the general public, rather than a "purely local economic activity." *Id*. at 787.

A review of other cases in which *nullum tempus* has been found to apply to municipalities shows that Tennessee courts apply the doctrine to municipalities in circumstances where the municipality is engaged in activity affecting the entire state. In *Knox County ex rel Schumpert v. Perceptics Corp*., No. 03A01-9803-CH-00089, 1998 WL 668721, at * 5 (Tenn. Ct. App. Sept. 30, 1998), the court applied the doctrine of *nullum tempus* to a breach of contract claim brought by the county against the supplier of a real estate registering and indexing computer system. The court reasoned that the indexing of deeds is a vital state function affecting all citizens of the state as evidenced by the constitutional requirement that all counties elect a registrar and state law requiring the registrar to register and index deeds. *Id*.

In *City of Elizabethton v. N. Am. Fibers, Inc*., No. E2003-02930-COA-R3-CV, 2004 WL 2636710, at *4 (Tenn. Ct. App. Nov. 19, 2004), the court applied the doctrine of *nullum tempus* to

13

a city's suit for breach of easement involving an inaccessible sewage system and the risk of catastrophic levels of environmental contamination of the Watauga river. Citing the Water Quality Control Act, Tenn. Code Ann. § 69-3-102(a), which states that it is "the public policy of Tennessee that the people of Tennessee … have a right to unpolluted waters," the court found that the city was engaged in the exercise of a governmental function as an arm of the state for the benefit of "not only the citizens of Elizabethton, but the general population of this state by securing, protecting and preserving the 'right to unpolluted waters.'" *Id*.

In *Hamilton Cty. Emergency Commc'ns Dist. v. BellSouth Telecom., LLC*, 154 F. Supp. 3d 666 (E.D. Tenn. 2016), *reversed on other grounds* 852 F.3d 521 (6th Cir. 2017), the court found a state-wide interest in 911 service for all counties and applied the doctrine of *nullum tempus* to claims brought by county level municipal corporations established to administer the 911 emergency communications service.

Milcrofton seeks to identify a comparable state policy interest in the provision of water, citing a portion of the Water Pollution Control Act, Tenn. Code Ann. § 69-3-102. The Water Pollution Control Act states, in part, "the waters of Tennessee are the property of the state and are held in public trust for the use of the people of the state." This Court finds this argument unpersuasive. The statute, though it does concern water, is about pollution control, not water utilities and provides no support for Milcrofton's argument that "Milcrofton helps the State carry out its public trust by providing water service to the public."[6]

---

[6] The full text of the cited provision states, "Recognizing that the waters of Tennessee are the property of the state and are held in public trust for the use of the people of the state, it is declared to be the public policy of Tennessee that the people of Tennessee, as beneficiaries of this trust, have a right to unpolluted waters. In the exercise of its public trust over the waters of the state, the government of Tennessee has an obligation to take all prudent steps to secure, protect, and preserve this right." Tenn. Code Ann. § 69-3-102(a).

14

Milcrofton cites *First Suburban Water Util. Dist. v. McCanless*, 146 S.W.2d 948 (Tenn. 1941) to support its argument that, as a utility district, Milcrofton is "an operation for a State, governmental, or public purpose." In *McCanless*, the court considered a constitutional challenge to the UDL shortly after its passage and held that the legislature did not violate the Tennessee constitution when it exempted utility districts from taxation. *Id.* at 950. In so doing, the court recognized that that utility districts are "municipal corporations" established "chiefly to regulate the local internal affairs of the city, town, or district incorporated." *Id.* (citing *State v. Knoxville*, 90 S.W. 289 (Tenn. 1905)). The *McCanless* court further alluded to the small, local nature of utility districts, noting, "We find no restriction upon legislative authority as to the size, powers, or field of operations, in the creation of one of its arms or instrumentalities." *Id.*

Tennessee has not addressed the application of *nullum tempus* to claims brought by a utility district to enforce an exclusive service area. However, the cases applying the doctrine to claims brought by municipalities have unmistakably involved claims in which "all the people of the state are interested"—education, unpolluted waters, registering and indexing deeds, and an emergency communication (911) system. The Court notes that the operation of public utilities, though unquestionably a matter of public interest, is generally considered a proprietary rather than a governmental function. *See Bybees Branch Water Assn. v. Town of McMinnville, Tennessee*, 333 S.W.2d 815 (Tenn. 1960) ("Operation of utilities [is done] in its proprietary or individual capacity rather than its legislative or governmental capacity" and is "governed, for the most part, by the same rules that control a private, individual or business corporation."). The dispute in this case, which is a territorial dispute between neighboring municipal corporations, is local in nature. Moreover, the state law under which Milcrofton and other water districts are created is permissive, not mandatory.

15

Local landowners may petition the local government for the creation of a utility district, but localities are not required to establish exclusive water districts. As the water service is already being provided, it is unlikely as decision in this case will directly affect even the customers within the disputed area, let alone implicate an interest in which the citizens of the state will be interested.

In consideration of the foregoing, the Court finds that the enforcement of an exclusive service area of a local water district is not a "public or governmental matter in which all the people of the state are interested" and, therefore, the doctrine of *nullum tempus* does not apply in this case. *See e.g.*, *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga.*, 129 F. Supp. 3d 589, (M.D. Tenn. 2015) (rejecting application of *nullum tempus* to claim brought by town against the gas utility because the interest was not one affecting the citizens of the state as "any recovery will inure solely to the benefit of the Town and perhaps it citizens"). Accordingly, Milcrofton must have filed its claims for violation of § 1926(b) within one year of the accrual of those claims. *See Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003) (applying one-year statute of limitations to claims brought under 42 U.S.C. § 1983).

### 3. Claim Accrual

The parties disagree about when the statute of limitations begins to run on a violation of § 1926(b). Milcrofton argues that even if the statute of limitations does apply to its claim for violation of § 1926(b), so long as the City continues to provide water within Milcrofton's service area, the claim could never be untimely. Milcrofton reasons "[w]ater service goes on continuously. It does not start and stop, creating discrete violations. The same continuous violation of § 1926(b) has been happening for years. Milcrofton could file a timely suit at any point." (Pl. Resp., Doc. No. 43 at 13-14). In the alternative, Milcrofton argues that the City began providing water service when

16

the meters were connected and by this standard, service commenced in certain parts of the developments within the one-year statute of limitations.

Citing *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996), the City posits that the statute begins to run when a "plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." The City argues Milcrofton had reason to know of the injury in 2008 when the City Commissioners passed resolutions committing to provide water service to the developments. Alternatively, the City argues that the statute begins to run when the City accepted the plats (which was apparently after the water lines were installed but before the meters are connected) or when the water mains were connected from each development to the City's system and the City collected tap fees from the developers.

Of the Sixth Circuit cases involving claims under Section 1926(b), two were brought while the municipality was still in the process of laying water pipes. *See Le-Ax Water Dist.*, 246 F.3d at 704 (case filed one month after municipality authorized a development agreement); *Ross*, 666 F.3d at 396 (case filed to halt construction of waterline in the disputed area). In *Lexington-South Elkhorn*, the water district alleged the encroaching municipality was already providing service within the disputed area. 93 F.3d at 232 (alleging the city annexed the area in which it had begun providing service or had begun providing water service outside of the city limits and within the boundaries of the water district). Although the defendant raised the issue of timeliness and the district court held the claim was barred by laches, the Sixth Circuit held that the water association had not made service available to the disputed area and did not reach the issue of timeliness. *Id*.

In *Village of Grafton v. Rural Lorain County Water*, 419 F.3d 562 (6th Cir. 2005), the Sixth Circuit had cause to address timeliness, albeit in a slightly different context. In *Village of Grafton*, the Village annexed and resolved to provide water service to a property called Fox Run in 1990. It

17

was not until August 2002, however, that property was developed. The water association, which had obtained a USDA loan in January 2002, filed suit in October 2002 seeking to enforce its exclusive service area under Section 1926(b). The court held that because the Village did not make any effort to provide water service to Fox Run until after the water association had obtained a USDA loan, the right to provide service lay with the water association. Although not part of the holding, the court stated that the Village provided water to the development when the water lines were installed. *Id*. at 564 ("In August 2002, the Village accepted Fox Run's dedication plat. Thereafter, the water lines were installed, and the Village began to provide water to the development."). This supports the City's position that water is "provided" when the water mains are connected to the City's water system.

Applying the reasoning from *Village of Grafton*, the Court finds that water is provided when the water mains are connected, and that the statute of limitations begins to run at that time. Milcrofton argues that the provision of water is ongoing, and its suit is timely at least with regard to the water provided during the limitations period. The parties have not fully briefed this issue and the Court declines to decide it now.

In sum, regarding the statute of limitations, the Court finds as follows: (1) the statute of limitations applies to Milcrofton's claim for violation of Section 1926(b); (2) the applicable limitations period is one year. However, because the parties have not adequately briefed the issue of accrual of the claim, the Court will not determine whether Milcrofton's claims are time-barred based on the statute of limitations at this time.

**B. Availability of Affirmative Defenses**

Milcrofton argues that estoppel and laches cannot serve as a bar to Section 1926(b) claims as a matter of law because application of any equitable affirmative defense would undermine federal

18

policy.  The City disagrees, asserting that under the circumstances of this case, neither laches nor estoppel would undermine federal policy.  The Court agrees.

As a general principle, the doctrine of equitable estoppel, like other principles of equity, will be applied flexibly by a federal court to achieve fairness and prevent injustice. *See Heckler v. Cmty. Health Serv. of Crawford Cty., Inc*. 467 U.S. 51, 59 (1984).  That being the case, courts will not apply equitable estoppel when doing so is against public policy.  Nor can estoppel be used as a means to avoid the requirements of legislation enacted for the protection of the public interest.  *Scott Paper Co. v. Marcalus Mfg. Co*., 326 U.S. 249, 257 (1945) (holding that private parties cannot contract to withhold from the public a patent whose monopoly term had expired in derogation of public policy as manifested in the federal patent laws).

Milcrofton relies upon a Seventh Circuit case, *Jennings Water, Inc. v. City of North Vernon, Inc*., 895 F.2d 311 (7th Cir. 1989), which held, under the facts of that case, the water district's motion for injunctive relief could not be barred by equitable estoppel.  Courts outside this circuit, have applied the holding in *Jennings* to categorically prohibit the application of all equitable defense, specifically estoppel, laches, and waiver, to any claims for violation of Section 1926(b). *See e.g. Sioux Rural Water Sys., Inc. v. City of Watertown*, No. 15-1023-CBK, 2017 WL 1372602 (Apr. 12, 2017); *Beckham Cty. Rural Water Dist. No. 3 v. Elk City*, No. CIV-05-1485-F, 2014 WL 12818729 (Jun. 2, 2014); *Rural Water Dist. No. 4, Douglas Cty., Kan. v. City of Eudora, Kan*., 604 F. Supp. 2d 1298, 1334 (D. Kan. 2009), *reversed on other grounds*, 659 F.3d 969 (10th Cir. 2011)).[7]

---

[7]     Although *Jennings* specifically applied only to estoppel, two district courts have expanded the holding in *Jennings* to include the equitable defenses of waiver and laches.  *See Sioux Rural Water*, 2017 WL 1372602, at *5; *Beckham Cty*, 2014 WL 12818729, at *8.

19

In *Jennings*, a water district brought suit under Section 1926(b) to enjoin its largest wholesale water customer from purchasing water from a nearby municipality instead of the water district. The water company did not initially object to an agreement between a nearby municipality and its major wholesale purchaser. *Id*. at 313. Not only did the water company know about agreement, it "actively expedited completion of the [] systems connection by ordering its employees to mark water lines to allow [its customer] to lay and connect its own water mains with those of [the municipality]." *Id*. However, in *Jennings*, the water association was advised by the federal loan agency, then the FmHA, to determine whether the loss of the wholesale purchaser as a customer would significantly affect revenue. *Id*. Three weeks later, the water district filed suit to block the completion of the pipe and the sale of water from the municipality to Jennings's wholesale customer, alleging the loss of its wholesale water customer would jeopardize its ability to pay the federal loan. *Id*. at 313-14. The municipality and wholesale customer argued the water district should be estopped from challenging their agreement because it failed to object to the contract when it first became aware. The *Jennings* court noted that defendant presented "a rather weak case for equitable estoppel under any circumstances." *Id*. at 316. Not only did the defendants know the water district was federally financed and subject to the constraints of § 1926(b), "Jennings never specifically advised CSL that it could proceed without fear of the statute." *Id*. at 316-17.

*Jennings* does not state a categorical rule that estoppel can never apply to a claim brought under Section 1926(b). The *Jennings* court did not make such a sweeping pronouncement, stating only that "in suits between private parties, traditional equitable estoppel may not always be available when the plaintiff's cause of action is based on a federal statute" and finding that "equitable estoppel, applied here, would 'block the application of a statute intended to protect the public interest'" *Jennings*, 895 F.2d at 317 (citing the opinion of the district court and *Scott Paper*, 326 U.S. at 257).

The Sixth Circuit has not addressed whether equitable estoppel or laches can apply to a claim for violation of Section 1926(b). In *Lexington-South Elkhorn,* 93 F.3d 230 (6th Cir. 1996), the district court dismissed the Section 1926(b) claim on multiple grounds, including estoppel and laches. *Id*. at 233. The Sixth Circuit, however, affirmed the district court decision on grounds that the water district had not made service available and did not reach the question of whether laches or estoppel precluded the claim. *Id*. at 238.

Applicable law, including *Jennings*, does not support the argument that laches and estoppel cannot apply to claims brought under Section 1926(b). The Supreme Court recently considered the application of laches with regard to claims for violation of the federal copyright statute and held laches could not bar a claim brought within the limitations period prescribed by Congress. *Petrella v. Metro-Goldwyn-Meyer, Inc*., 572 U.S. 663, 684-85 (2014). The court reasoned that Congress made the limitations period part of the statute and to bar claims brought within this period on the basis of laches would undermine the policy prescribed by Congress. *Id*.

In dicta, the *Petrella* court addressed the distinction between laches and estoppel. "The test for estoppel is more exacting than the test for laches, and the two defenses are differently oriented. The gravamen of estoppel, a defense long recognized as available in actions at law, is misleading and consequent loss. Delay may be involved, but is not an element of the defense." *Id*. The *Petrella* court left open the possibility that estoppel may be an available defense even when laches—where timeliness is the essential element—cannot. *Id*. ("For laches, timeliness is the essential element. In contrast to laches, urged by [defendant] entirely to override the statute of limitations Congress prescribed, estoppel does not undermine Congress' prescription, for it rests on misleading, whether engaged in early on, or later in time.").

21

In *Petrella*, the court cites a Sixth Circuit opinion as illustrative of the distinctions between estoppel and laches in another copyright infringement case – *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227 (6th Cir. 2007). In *Chirco*, the defendants were alleged to have used the plaintiffs' copyrighted architectural design to plan and build a housing development. Plaintiffs were aware of the defendants' project and took no steps to stop construction until 168 units were built and mostly occupied. Although the case was filed within the three-year statutory limitations period, the District Court dismissed the case on grounds of laches. On appeal, the Sixth Circuit affirmed on different grounds, holding that plaintiffs would not be entitled to an order requiring the destruction of the housing project because such relief would be inequitable. The court cited two reasons: (1) plaintiffs knew of the construction plans and failed to take measures to stop the project before the defendants broke ground; (2) the requested relief would "work and unjust hardship" upon the defendants and innocent third parties.

As applied here, *Petrella* counsels that affirmative defenses may apply to claims brought under federal statutes when those defenses do not undermine the public policies embodied in the statute. Importantly, preclusion of one affirmative defense for policy reasons does not categorically bar a different affirmative defense that does not implicate the same policy considerations.

The cases cited by Milcrofton in support of the argument that laches cannot apply do not compel a different conclusion. *See Hatchett v. United States*, 330 F. 3d 875, 887 (6th Cir. 2003) (applying the "general rule" that the government is exempt from the doctrine of laches); *Guar. Trust Co. of N.Y. v. United States*, 304 U.S. 126, 132 (1938) (considering whether laches applies to claims brought by a foreign government). Both cases address the available of laches as a defense to claims brought by the United States and apply the well-established rule that the government is exempt from the consequence of its laches. Indeed, the rule that the government is exempt from the consequence

22

of its laches is the very definition of *quod nullum tempus occurit regi*. The claims in this case are not brought by the United States and, as discussed, the *nullum tempus* doctrine does not apply to the claims in this case.

Finding that equitable defenses of laches and estoppel are not categorically barred, the Court considers whether application of estoppel or laches would undermine the legislative purpose of Section 1926(b). Section 1926(b) has two specific purposes: (1) "to encourage rural water development by expanding the number of potential users" and (2) "to safeguard the financial viability of rural water associations and [their federal] loans." *Ross*, 666 F.3d at 397 (quoting *Lexington-South Elkhorn*, 93 F.3d at 233). The first purpose benefits the public in need of water. The second purpose benefits the federal government and its interest in having its loan repaid. The statute contains no policy prescription regarding the time in which claims for violation of Section 1926(b) must be pursued.

Milcrofton was aware in 2007 of the planned development of what is now the Morgan Farms and Traditions subdivisions. The developers asked Milcrofton to provide water service and Milcrofton said, "no." It said, "no," more than once. In May 2008, the City Commission passed a resolution at a public meeting acknowledging its commitment to provide water and sewer service to Morgan Farms and Traditions. (Doc. No. 45, ¶ 16). Significantly more time has passed since Milcrofton was aware (or should have been aware) that the City intended to provide water service to the developments than was at issue in *Jennings*. In *Jennings*, the water district was aware it was losing its biggest wholesale customer to a neighboring municipality for about six months before bringing suit. Here, over ten years have passed since Milcrofton was aware the City intended to provide water service. Construction, though delayed, began in 2013. Milcrofton did not bring suit until 2018, five years later.

23

In addition, as part of the planning for Morgan Farms and Traditions, the USDA approved a transfer of water service area between the Nolensville/College Grove Utility District and the City in 2008. The associated maps showed the disputed area as "unclaimed." Unlike in *Jennings*, there is no indication that the federal agency advised Milcrofton to assert its right to serve the disputed territory. Nor is there any indication that the City's service to the area has threatened Milcrofton's ability to repay its federal loan or that Milcrofton relied on the disputed area as part of its territory to secure the bond from the USDA. In fact, all indications are that in 2007 when Milcrofton resolved to obtain USDA funding, it believed the disputed areas were not within its boundaries.

The Court finds that under the facts of this case, the application of estoppel or laches would not undermine the legislative purpose of Section 1926(b). The interest of the public in receiving water service is not undermined by applying rules of equity to preclude a claim by a water district that by its own standard declined to provide such service. Nor is there any indication that the government's interest in having its loan repaid will be impaired by the application of estoppel or laches in this case.

Equitable estoppel requires a showing that there was: "(1) [a] misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) [a] detriment to the party asserting estoppel." *U.S. v. City of Loveland, Ohio*, 621 F.3d 465, 473 (6th Cir. 2010) (citing *Premo v. United States,* 599 F.3d 540, 547 (6th Cir. 2010). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Id.* (citing *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.,* 270 F.3d 298, 320 (6th Cir.2001)); *Wells v. U.S. Steel and Carnegie Pension Fund, Inc*., 950 F.2d 1244 (6th Cir. 1991) (the essential elements of laches are an unreasonable delay and a change of position of the innocent party to its detriment of prejudice).

24

"The principle that the passage of time can preclude relief has deep roots in our law, and this Court has recognized this prescription in various guises. It is well established that laches, a doctrine focused on one side's inaction and the other's legitimate reliance, may bar long-dormant claims for equitable relief." *City of Sherrill, N.Y. v. Oneida Indian Nation of N.Y.*, 544 U.S. 197, 217 (2005).

The Court finds that there are questions of fact regarding the reasonableness of the City's reliance on Milcrofton's disavowal of the right to serve the disputed area in 2007 and whether the City reasonably continued to rely on the 2007 statements when the developers recommenced work on Morgan Farms and Traditions many years later. In addition, there are questions of fact regarding Milcrofton's knowledge of the developments at Morgan Farms and Traditions and whether it could have or should have asserted its alleged right to serve the areas at an earlier time. The City acknowledges that, after the inquiries in 2007, it did not communicate with Milcrofton about its intent to serve the developments. The City claims, however, the Milcrofton could have and should have known of the developments because of the 2008 City Ordinances committing to provide water and sewer service and that the construction, once it began in 2013, was visible from major public roads.

In sum, the Court finds that the equitable defenses of estoppel and laches are available in this case, but that questions of fact regarding the reasonableness of the City's reliance on Milcrofton's 2007 statements and questions of fact regarding the reasonableness of Milcrofton's delay in bringing suit preclude summary judgment.

## C. Protection Under Section 1926(b)

To establish that it is entitled to protection under Section 1926(b), Milcrofton must show that: (1) it is an "association" with the meaning of the Act; (2) it has a qualifying outstanding USDA loan obligation; and (3) it has provided or made service available in the disputed area. *Ross*, 666

25

F.3d at 397. The parties do not dispute that Milcrofton is an association within the meaning of the act or that it has, at all relevant times, had a qualifying FHA loan obligation. Accordingly, the only question for the Court to resolve is whether Milcrofton provided or made service available in the disputed area. To satisfy the third prong, Milcrofton must demonstrate that it (a) had "pipes in the ground" that provide service within or adjacent to the disputed area before the allegedly encroaching association began providing water service to customers in the disputed area; (b) was capable of providing service to the disputed area within a reasonable time after a request for service has been made; and (c) had the legal right under state law to serve the disputed area. *Id*. at 399.

The City argues that the Court need not apply the "pipes in the ground" test because Milcrofton itself declined to provide service when requested to do so in 2007 and, therefore, cannot be found to have made service available so that it can avail itself of the protections of the statute.

The Sixth Circuit has applied the "pipes in the ground" test in the context of a disputed service area where two water service providers claimed the right to provide service. The facts of this case are different. Although Milcrofton is now asserting the right to serve the disputed area, in 2007 when asked to provide water service, it said, "no," more than once. If a water company, even one with an obligation to provide water service to a given area, disclaims responsibility and says it will not or cannot provide service, it matters not that the water company has adjacent pipes in the ground capable of serving the area. Moreover, even if the Court were to apply the "pipes in the ground" test, a company's statement that it would not or could not provide service serves as very strong evidence of the district's inability to provide service within a reasonable time. Milcrofton's argument that the Court should look only at the physical ability to provide service, taken to its logical conclusion, would allow a water company to state that it could not or would not provide service to a given area and then, assuming it still had a qualifying loan obligation, claim a territorial

26

infringement ten years later because, contrary to its representations, it in fact could have provided service.

Milcrofton is correct, however, that barring its claim on the basis of its 2007 representations effects an estoppel either with regard to ability to serve or service area or both. As stated above, there are genuine questions of material fact regarding the reasonableness of the City's reliance on Milcrofton's 2007 statements, particularly in light of the passage of time between the initial inquiry and the commencement of construction.

Moreover, there are material questions of fact regarding Milcrofton's ability to serve the disputed are within a "reasonable" time of the request for service and Milcrofton's right under state law to serve the disputed area.

    1.  <u>Service within a Reasonable Time</u>

In 2007, Milcrofton stated that it would not have the capacity to provide service to the developments until system upgrades were completed in one to three years. Those upgrades were complete in 2009. (Doc. No. 40, ¶¶17-20). However, Milcrofton concedes that additional improvements to its existing infrastructure are still necessary before it could provide service to the developments, specifically: (1) replacement of the two-inch water main that served the property at 1820 Wilson Pike – now the entrance to Traditions –with an eight-inch pipe; (2) installation of approximately 300 feet of eight-inch pipe to connect its existing service in the Breezeway development to Morgan Farms; and (3) installation of 1500 feet of eight-inch pipe to connect Traditions to Morgan Farms and "loop" the system. Construction of the "loop" would require Milcrofton to obtain an easement along the future McEwen Drive right-of-way. Milcrofton estimates the necessary improvements could be made in less than fifteen days. (Doc. No. 40, ¶¶ 21-24).

These are not "minor" improvements, such as those considered by the court in *Le-Ax Water Dist. v. City of Athens, Ohio*, 346 F.3d 701, 707 (6th Cir. 2003). In *Le-Ax*, the court found that the water district had "water lines 'within or adjacent to the relevant property'" that could meet the need of the property. The *Le-Ax* court acknowledged that the water district had both appropriately sized pipes and water tanks to augment the system. *Id.* The only improvement needed was a pressure reducing valve that cost roughly $2,000. *Id. See also*, *Vill. of Grafton*, 419 F.3d at 566 (water district had water lines to the disputed area and could provide water service "overnight").

Other courts have found the capacity of existing pipes and easement requirements relevant to a determination of whether service was made available. In *Bell Arthur Water Corp. v. Greenville Util. Comm'n*, 173 F.3d 517, 525 (4th Cir. 1999), the court found that the water district did not have capacity to service the disputed area or provide service within a reasonable time when adjacent pipes were too small and the water district had taken no meaningful steps to construct a new pipeline within a reasonable time. In *N. Ohio Rural Water v. Erie Cty. Bd. of Cty. Comm'rs*, 347 F. Supp. 2d 511, 515 (N.D. Ohio 2004), the court denied Section 1926(b) protection on a number of grounds, including that water service was not "made available" when water district had lines "surrounding the disputed territory, but not within or adjacent to the specific areas at issue" and that the water district had not established a legal right to serve the area because it not obtained necessary easements to install water lines.

To serve Traditions and Morgan Farms, not only does the Milcrofton system require system improvements more significant than those considered in *Le-Ax*, Milcrofton would also need to obtain an easement, which may or may not be obtainable in a reasonable time. Furthermore, any question of reasonableness must consider the extended timeline of the development of the disputed

area—that although service was requested in 2007, the developers did not begin to lay pipes until 2013.

Whether Milcrofton could provide service within a reasonable time presents questions of fact not capable or appropriate for resolution on a motion for summary judgment.

2. Legal Right to Serve

State law governing utility districts provides that a utility district has priority to serve areas within its boundaries and although it has authority to serve areas "within or without" its boundaries, cities and towns with populations above 3,000 have priority to serve areas within three to five miles of its corporate limits that are not within the boundary of a utility district. Tenn. Code Ann. § 7-82-302(a) and (g). The land on which Morgan Farms and Traditions are situated is a part of the City of Brentwood. (*See* SOF, Doc. No. 45, ¶ 3). The City, therefore, has priority to service the developments unless the developments are located within Milcrofton's service area. Moreover, in *Le-Ax Water District*, the Sixth Circuit held that "when a rural water district's boundaries are geographically determined by the state, a rural water district cannot use § 1926(b) to obtain new customers outside the geographic area." *Le-Ax Water Dist.*, 346 F.3d ay 709. Milcrofton's boundaries are, therefore, dispositive of this element.

Milcrofton Utility District was created by judicial order in 1971 and "recreated" by judicial order on October 10, 1975. The order established the "perimeters and boundary lines" of Milcrofton. The Order creates a northern boundary that may or may not encompass the Morgan Farms and Traditions developments. Milcrofton insists the northern boundary is the same as that of

29

the Fourteenth Civil District, but the order establishing the water district is not so clear.[8]  The Order

describes the northern boundary as follows:

> [Beginning at] the point where Liberty Pike, I-65 and the southern boundary of the 8th Civil District of Williamson County intersect; thence eastwardly along the southern boundary of the 8th Civil District and following the same to the point where it comes closest to Clovercroft Road; thence following the 8th Civil District line northwardly and northeasterly to a point where the East boundary of the 8th Civil District and the South Boundary of the 15th Civil District intersect; thence eastwardly along the southern boundary of the 15th Civil District of Williamson County to the point where said southern boundary of the 15th Civil District intersects with the 16th, 19th and 14th Civil Districts of Williamson County …

Order, *In the Matter of: Milcrofton Util. Dist.*, Rule No. 462 (Williamson Cty. Ct. Oct. 10, 1975)

(Doc. No. 25-2 at DocID# 215-19).  The City argues that the maps Milcrofton is currently relying

on, cannot be an accurate depiction of the northern service area because the point where the 16th,

19th, and 14th Civil Districts intersect is not shown on any of these maps.

The parties have submitted innumerable maps, most of which are indecipherable.  If

Milcrofton is not estopped from claiming Morgan Farms and Traditions are within its service area

based on its repeated representations in 2007, whether the developments are, in fact, within

Milcrofton's service area presents a question of fact not capable of resolution on a motion for

summary judgment.

**D.  Tenn. Code Ann. § 7-82-301(a)(1)(B)**

Milcrofton alleges that by providing water service within its service area, the City has

violated state law establishing that a utility district "shall be the sole public corporation empowered

---

[8] Milcrofton's assertion that the City has admitted the northern district boundary is the same as the 14th Civil District is unavailing. The City has clearly stated its position that Morgan Farms and Traditions are located outside Milcrofton's boundaries.  The purported admissions to no establish that the boundary of the 14th Civil District and Milcrofton's northern boundary are on in the same.

to furnish such services in the district, and no other person, firm or corporation shall furnish or attempted to furnish any of the services in the area embraced by the district, unless and until it has been established that the public convenience and necessity requires other or additional services." Tenn. Code Ann. § 7-82-301(a)(1)(B).

For the reasons stated with regard to the federal claim, questions of fact preclude summary judgment on the state law claim, particularly questions regarding the boundaries of the Milcrofton service area and whether laches apply to bar the claim.

## IV.    CONCLUSION

For the reasons stated.  Plaintiff's Motion for Partial Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **DENIED**.

An appropriate Order will enter.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

31